UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEROME DAVIS,

    Plaintiff,

        v.                           CAUSE NO. 3:23-CV-759-PPS

DISHITA PATEL,

    Defendant.

<u>OPINION AND ORDER</u>

Jerome Davis, a prisoner without a lawyer, is proceeding in this case against

Nurse Practitioner (NP) Dishita Patel in her individual capacity for compensatory and

punitive damages for deliberate indifference to his serious medical need for an inhaler

at Westville Correctional Facility (WCF) until his December 2022 transfer to a different

facility, in violation of the Eighth Amendment. ECF 8 at 6. NP Patel filed a motion for

summary judgment, which is now fully briefed. ECF 55, 61, 62, 63, 64.[1]

Summary judgment must be granted when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes

---

[1] In her reply brief [DE 64], NP Patel argues Davis' response should be stricken because it (1) was not timely filed and (2) does not comply with Local Rule 56-1(b) because he did not include a response to her statement of material facts. Because Davis is proceeding pro se, I will overlook these hiccups and deny the motion to strike; Davis' response will remain part of the record and be considered in ruling on NP Patel's summary judgment motion.

summary judgment inappropriate, only *material* disputes matter.  In other words, "only

disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." *Id.* To determine whether a

genuine issue of material fact exists, I must construe all facts in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *See*

*Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a

properly supported summary judgment motion may not rely merely on allegations or

denials in its own pleading, but rather must "marshal and present the court with the

evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d

651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not

suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Under the Eighth Amendment, inmates are entitled to adequate medical care.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth

Amendment, a prisoner must show: (1) his medical condition was objectively serious;

and (2) the defendant acted with deliberate indifference to his medical condition. *Farmer*

*v. Brennan*, 511 U.S. 825, 834 (1994); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir.

2008). For a medical professional to be held liable for deliberate indifference to an

inmate's medical needs, she must make a decision that represents "such a substantial

departure from accepted professional judgment, practice, or standards, as to

demonstrate that the person responsible actually did not base the decision on such a

judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has

explained:

2

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98 (citations and internal quotation marks omitted). Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Gill v. Myers*, No. 3:06-CV-00061-RM, 2008 WL 4327072, at *3 (N.D. Ind. Sept. 16, 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Section 1983 requires a plaintiff to show more than just a violation of a constitutional right. To recover damages from a defendant, he must also prove that defendant was personally involved in the violation. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal

liability and predicated upon fault.”). A defendant cannot be liable without "a showing of direct responsibility for the improper action[.]" *Id.* This is because there is no general *respondeat superior* liability under § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). As this circuit has explained:

> The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights. Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. That is, to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations and internal quotation marks omitted).

In support of her summary judgment motion, NP Patel provides her own affidavit and Davis' medical records, which show the following facts: Shortly after Davis arrived at WCF, a physician prescribed him a Proventil inhaler for his asthma and instructed him to take two puffs every four to six hours. ECF 56-2 at 32; ECF 56-3. The order allowed Davis a maximum of one refill every four to six months. ECF 56-3.

When an inmate at WCF is prescribed an asthma inhaler, the inmate is responsible for obtaining his own refills by submitting a written refill request. ECF 56-1 at 1. If there is an active order for the inhaler, the refill request is sent to the pharmacy, and the inmate takes his empty inhaler to the drug room for a new one. ECF 56-1 at 1-2. If there is no active order, the nurse who handles the refill request will submit a request

for a new order to a medical provider. ECF 56-1 at 2. Additionally, an inmate who has an urgent need for an inhaler may obtain one from the nurses in the medical unit. *Id.*

During NP Patel's tenure at WCF, she has not processed or handled inmate grievances, healthcare request forms (HCRF), or medication refill requests. ECF 56-1 at 2. Instead, these documents are triaged and responded to by licensed practical nurses and registered nurses who may schedule the inmate for a provider visit as they deem appropriate. *Id.* NP Patel is only aware of a refill request if it is specifically brought to her attention by the nurses or by the inmate during a medical visit. *Id.*

On November 19, 2021, NP Patel saw Davis for the first time at a chronic care visit related to his asthma. ECF 56-1 at 3; ECF 56-2 at 33-35. NP Patel noted Davis denied any wheezing, coughing, or shortness of breath, and that he reported he had been able to limit the use of his inhaler. *Id.* Davis' vital signs were within normal limits, including his blood pressure, heart rate, oxygen saturation, and respiration rate. *Id.* NP Patel's physical examination revealed normal lung sounds, respiratory effort, and cardiovascular function. *Id.* NP Patel concluded Davis' asthma was stable on his current medication and continued him on his Proventil inhaler. *Id.* She set a "stop date" for the inhaler of January 17, 2022, which required Davis to check in with a medical provider before that date to confirm his inhaler was still effective. *Id.*

On April 13, 2022, Davis saw a nurse and requested a refill of his Proventil inhaler. ECF 56-2 at 44. Per the nurse's request, .NP Patel authorized the renewal with a stop date of June 11, 2022. ECF 56-1 at 3.

On May 17, 2022, NP Patel saw Davis for a chronic care visit related to his asthma. ECF 56-1 at 3-4; ECF 56-2 at 45-47. Davis' vital signs remained within normal limits, and a physical examination revealed normal lung sounds, normal respiratory effort, and a normal cardiovascular assessment. *Id.* NP Patel again concluded Davis' asthma was stable on his current medication, and did not stop or change his prescription. *Id.*

On July 18, 2022, Davis submitted a HCRF stating "I am still having trouble breathing with the current medication I have in my inhaler. Can I please get a better prescription that's going to actually work and help me." ECF 63-1 at 3. He requested that he be seen in sick call. *Id.* In response to this HCRF, Davis was seen by Nurse Jeanmarie Spencer in sick call on August 3, 2022. *Id.*; ECF 56-2 at 49-51. Nurse Spencer examined Davis and found his vital signs were within normal limits and his lung sounded clear. ECF 56-2 at 49-51. Davis refused peak flow testing. *Id.* Nurse Spencer documented that Davis stated he "has not gotten his inhaler and would like a stronger one" as "the one that is prescribed to him does not work." *Id.* Nurse Spencer reported she would send a message to NP Patel about the inhaler, and if that did not work he could discuss the issue with his provider at his upcoming chronic care visit. *Id.* Nurse Spencer told Davis that coming to sick call and making a demand was the wrong way to obtain a different inhaler, and that her assessment was that he was stable and doing well on his current inhaler. *Id.*

NP Patel has no record that Nurse Spencer ever contacted her for a refill following this sick call visit. ECF 56-1 at 5. If Nurse Spencer had contacted NP Patel, NP

Patel would have renewed Davis' Proventil inhaler because there was nothing about Nurse Spencer's assessment that indicated the Proventil inhaler was ineffective or that Davis required a different medication. *Id.* at 4-5.

It is unclear from the record when Davis next received a refill for his inhaler following the August 3 sick call visit. On November 28, 2022, NP Patel saw Davis for a chronic care visit, noted he was doing well on his current inhaler, and found he had normal vital signs, his respiratory and cardiovascular examinations were normal, and she noted no cough, dyspnea, wheezing, or chest pain. ECF 56-1 at 5; ECF 56-2 at 56-58. NP Patel concluded Davis' asthma was well controlled on his current medication. ECF 56-1 at 5. She renewed his prescription for the Proventil inhaler with a stop date of May 26, 2023. ECF 56-1 at 5; ECF 56-2 at 58.

NP Patel did not have any further involvement with Davis' care after November 28, 2022. ECF 56-1 at 5. Indeed, Davis was later transferred from WCF to Chain O' Lakes Correctional Facility, where he continued receiving his Proventil inhaler. ECF 56-2 at 59, 68-70. Because Davis does not dispute any of these facts in his summary judgment response, the court accepts them as undisputed. *See* ECF 61, 62, 63.

NP Patel argues summary judgment is warranted in her favor because she provided Davis constitutionally adequate medical care for his asthma on each occasion she saw him. ECF 57 at 14-16. Here, it is undisputed that each time NP Patel saw Davis she performed a physical assessment, determined his asthma was stable and well controlled, and continued him on his Proventil inhaler. In order to survive summary

7

judgment, Davis must provide evidence the medical care he received from NP Patel was "plainly inappropriate" or violated a standard of care.

In his summary judgment response and attached declaration, Davis asserts that NP Patel provided constitutionally inadequate care because he was forced to go without his inhaler for some period of time. Davis does not explain when or for how long he was forced to go without his inhaler. *See* ECF 61; ECF 62. He attests he filled out HCRF stating he was having difficulty with his asthma due to the heat, but he was not provided a new inhaler in response to these HCRF. ECF 62 at 1. Davis believes NP Patel either stopped his prescription for his inhaler or allowed someone else to stop it, stating: "whether she stopped my inhaler or not she allowed someone to which is deliberate indifference to my serious medical needs." ECF 61 at 2.

At bottom, Davis has not provided any evidence by which a reasonable jury could conclude NP Patel was personally responsible for denying him constitutionally adequate medical treatment. Specifically, NP Patel attests that: (1) Davis was responsible for obtaining his own inhaler refills by submitting a written refill request; (2) she is not the person responsible for processing grievances, HCRF, or medication refill requests at WCF; and (3) she never discontinued or denied any request to refill Davis' inhaler. ECF 56-1 at 1-2, 6. What's more, NP Patel provides evidence that each time she examined Davis she found his asthma was well controlled and continued him on his Proventil inhaler. In his response, Davis only speculates that NP Patel stopped his inhaler prescription, which is insufficient to create a genuine dispute.

8

The record does reflect that Davis complained to Nurse Spencer about needing his inhaler on August 3, 2022, indicating he did not have access to his inhaler at that time. ECF 56-2 at 49-51. But NP Patel attests she has no record of ever being contacted by Nurse Spencer in regard to this complaint. ECF 56-1 at 5. And when NP Patel next saw Davis over two months later, she examined him, found his asthma was well controlled, and continued him on his inhaler. ECF 56-1 at 5; ECF 56-2 at 56-58. Accepting as true that Davis was denied access to his inhaler for some period of time around August 2022, there is no evidence NP Patel was personally involved in denying him access to his inhaler.

Davis asserts in his response that even if NP Patel did not personally stop his inhaler, she should be held liable because she "oversees" all the medical slips and all refills "must be signed off by her." ECF 61 at 1. Davis is in effect arguing NP Patel should be held liable because she is a supervisor. This is not a sufficient basis for liability, as there is no evidence NP Patel ever knew of and condoned a denial of a request to refill Davis' inhaler. *See Burks*, 555 F.3d at 596; *Chavez*, 251 F.3d at 651. NP Patel attests she never denied any request to refill Davis' inhaler, and Davis' vague speculation that NP Patel "oversees" all medical slips and "sign[s] off" on all refill requests does not genuinely dispute this attestation, particularly where the record contains no evidence any refill request was ever submitted or denied. *See Trade Fin. Partners*, 573 F.3d at 407 (explaining that "inferences relying on mere speculation or conjecture will not suffice" to create a genuine dispute); *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established

that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations."); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough") (quotation marks, brackets, and citation omitted).

In sum, because Davis does not genuinely dispute NP Patel's attestation that she never stopped his inhaler or denied a request to refill his inhaler, the record contains insufficient evidence by which a reasonable jury could conclude NP Patel was personally responsible for violating Davis' Eighth Amendment rights. Summary judgment is therefore warranted in favor of NP Patel.

For these reasons, the court:

(1) DENIES NP Patel's motion to strike Davis' response (ECF 64);

(2) GRANTS NP Patel's motion for summary judgment (ECF 55); and

(3) DIRECTS the clerk to enter judgment in favor of NP Patel and against Jerome Davis and to close this case.

**SO ORDERED.**

ENTERED: June 11, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT